IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

A.T.,[1]

        Plaintiff,

v.                                                      Case No. 17-4110-JWB

NANCY BERRYHILL,
*Acting Commissioner of Social Security,*

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for social security disability benefits. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 17, 24, 25, 28.) The Commissioner's decision is AFFIRMED for the reasons set forth herein.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is

capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

**II. History of Case**

*A. Summary of the evidence*. Plaintiff received treatment for several years at Bert Nash Community Mental Health Center. He was diagnosed in 2011 with schizophreniform disorder. (R. at 22.) On July 14, 2011, when Plaintiff was 25 years old, he was referred to Stormont-Vail Hospital in Topeka for psychiatric inpatient treatment. His symptoms included impaired thought processes, delusional thinking, and talking to unseen others. During his stay, his psychotropic medication was changed from Abilify to injectable Invega Sustenna (an extended-release anti-psychotic medication), and he was also treated with Klonopin for anxiety. He was discharged after eleven days with a diagnosis of schizophrenia and anxiety disorder. (R. 490, 522.) He declined placement in a residential treatment center and was referred for outpatient treatment.

Marsha Ward, a nurse practitioner who saw Plaintiff on June 20, 2012, noted that Plaintiff's symptoms were in full remission. (R. at 381.) Plaintiff was receiving monthly injections of Invega Sustenna and was taking anti-anxiety medication. His energy was good and his judgment and insight were fair. (*Id.*) He expressed concern that his medication was causing him to gain weight. Plaintiff was working a night shift job. He reported annual earnings of more than $18,000 from 2012 through 2014. (R. 381; 225-26.)

Nurse practitioner Ward saw Plaintiff on April 5, 2013, and noted his compliance with his medication regimen at that point was poor, and his symptoms (including disorganized thinking and delusions) were recurring. (R. at 461.) Plaintiff apparently quit taking Invega Sustenna injections over concerns it was causing him to gain weight. Ward noted that Plaintiff was still working but would likely end up back in the hospital without his medications. Plaintiff agreed to start taking his medications again. (*Id.*)

On September 19, 2014, nurse practitioner Cora Franklin completed a "Certificate of Disability" relating to Plaintiff's request for housing benefits from the Lawrence Housing Authority. She checked a form indicating Plaintiff met the definition of disability under the Social Security Act. (R. at 465.) On October 2, 2014, and again on May 22, 2015, Franklin completed disability forms stating that Plaintiff was diagnosed with "295.10 Schizophrenia Disorganized type" and checked a box indicating the condition prevented gainful employment. (R. at 464, 466.)

On November 10, 2014, nurse practitioner Franklin saw Plaintiff and noted his mental status had improved with medication; his thoughts were coherent, organized, and logical; and his mood was good, although he complained of anxiety and restlessness. The note stated Plaintiff denied depression but "[l]ost his job [and had] nothing to do." (R. at 408.) It stated Plaintiff was pleasant and responsive but there was "still some resistance to medication." (*Id.*) Franklin prescribed Hydroxyzine for Plaintiff's anxiety and halted his prescription for clonazepam, which Plaintiff had not been taking. (*Id.*) He continued to take Invega Sustenna.

On June 25, 2015, Franklin saw Plaintiff and noted he felt better after having switched his anti-psychotic medication from Invega Sustenna to Abilify. (R. at 446-47.) Plaintiff asked for a lower dosage but Franklin told him it would be better to assess that need in the future. Plaintiff reported that he was working as a taxi driver and he liked the job. Franklin also noted Plaintiff

4

was pleasant, responsive, and motivated for treatment, that he had lost weight, and that his prognosis was fair. (*Id.*)

On September 25, 2015, Franklin noted Plaintiff denied symptoms and stated that "everything [was] mellow." Plaintiff continued to work five days a week, lived independently, and stated that he planned to start playing on a basketball team. Franklin indicated his prognosis was fair. (R. at 444-45.) Franklin also noted Plaintiff "talked to disability & can't gross over $1,000.00 per month." (R. at 444.)

In April of 2016, Plaintiff met with his case manager at Bert Nash for a review. The notes indicate Plaintiff was working 15 hours a week at a fast food restaurant, although he was worried he would be fired for being too slow. (R. at 442.)

R.E. Schulman, Ph.D., is a state agency psychologist who reviewed the record evidence in November 2014. He opined that Plaintiff's schizophrenic disorder did not meet a regulatory listing. He opined that Plaintiff was capable of understanding, remembering, and making decisions for simple instructions and tasks. He indicated Plaintiff had moderate limitations in maintaining concentration, working with others, and interacting with the public. (R. at 83-84.)

Crystal Duclos, Psy.D., is a state agency consultant who reviewed the record evidence in March 2015. She agreed that Plaintiff's impairment did not meet a listing. Her opinions generally mirror those of Dr. Schulman noted above. (R. at 105-06.) Duclos specifically rated Plaintiff's restrictions in activities of daily living ("ADLs") as "mild" and his difficulties in social functioning and concentration, persistence, and pace ("cpp") as "moderate." In a subsequent narrative section of the report, however, Duclos stated that Plaintiff "continues to have mild limitations in ADLs and *marked* limitations in social functioning and cpp. See MRFC." (R. at 103) (emphasis added.) The MRFC (Mental Residual Functional Capacity) referred to by Duclos rated Plaintiff as being

5

"moderately" limited in some social function and concentration categories but contained no findings of any "marked" limitations. (R. at 105-06.)

On May 25, 2016, Plaintiff's case manager, Justin Gudenkauf, completed a residual mental functional capacity questionnaire opining that Plaintiff had restrictions in daily living and social functioning, deficiencies in concentration, and episodes of decompensation. He also provided a narrative report stating that Plaintiff had an inability to sustain concentration, which contributed to his inability to sustain employment for any length of time, that Plaintiff could not remember directions after a few days, that he was frequently fired from work after one to three months, that his symptoms worsened when he skipped medication, that he frequently missed appointments, and that he could not work full-time. (R. at 474-78.) Gudenkauf also testified at the hearing before the ALJ and reiterated his opinion that Plaintiff could not sustain full-time work due to his impairment. (R. at 61-64, 67.)

On June 3, 2016, Takeshi Yoshida, M.D., a supervising physician at Bert Nash, cosigned Gudenkauf's questionnaire and report. (R. at 476.) Yoshida also completed a "Treating Physician Questionnaire" on June 3, 2016, stating that Plaintiff's impairment met the regulatory listing in 12.03 for schizophrenia, in part because Plaintiff had marked restrictions or difficulties in activities of daily living, social functioning, and concentration, as well as repeated episodes of decompensation of extended duration. (R. at 467.) Yoshida noted he was "filling [out] this form on behalf of Cora Franklin, APRN, who was his psychiatric medical provider." (R. at 468.) Yoshida also completed a mental RFC assessment form at the same time. (R. at 470-72.)

*ALJ Ruling*. On August 12, 2014, Plaintiff filed his application for disability insurance benefits, alleging a disability beginning June 25, 2014. He also protectively filed an application for supplemental security income benefits. His claims were denied initially by the agency on

6

November 7, 2014, and upon reconsideration on March 11, 2015. He then requested an evidentiary hearing, which was held before ALJ Timothy Stueve in Topeka, Kansas, on June 1, 2016.

In ruling on Plaintiff's claim, the ALJ noted at step one that Plaintiff had not engaged in substantial gainful employment since June 25, 2014, the alleged onset date. At step two the ALJ found Plaintiff suffered from a severe impairment of psychosis, NOS (not otherwise specified). At step three the ALJ found Plaintiff did not have an impairment that met one of the regulatory listings. In so finding, the ALJ found that Plaintiff had no more than mild limitations in activities of daily living; moderate difficulties in social functioning, moderate limitations in concentration, persistence, and pace; and no episodes of decompensation of extended duration. (R. at 19-20.)

The ALJ determined that Plaintiff had the RFC to perform work at all exertional levels with the following non-exertional limitations: he is able to understand, carry out, and remember simple, routine, and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes; he is able to concentrate for two-hour periods; he is not able to perform any fast-moving assembly line type of work; he cannot have interaction with the public; he can be around coworkers throughout the day but with only brief incidental interaction and no tandem job tasks. (R. at 21.)

At step four, the ALJ found Plaintiff was unable to perform any of his past relevant work. (R. at 26.) At step five, the ALJ found Plaintiff could perform jobs that exist in substantial numbers in the national economy. (R. at 27.) The ALJ cited testimony by a vocational expert that a person with Plaintiff's RFC could perform certain unskilled jobs. The ALJ indicated that those positions included laundry worker II (DOT 361.685-018), laundry sorter (DOT 361.687-014), and garment sorter (DOT 222.687-014).[2] (R. at 27.)

---

[2] Although the ALJ stated that the vocational expert testified about the position of garment sorter (DOT 222.687-014), the transcript shows the expert actually cited "machine cleaner" (DOT 699.687-014) as the third position that a person

7

**III. Analysis**

1. <u>ALJ's weighing of the evidence at step three</u>. Plaintiff contends the ALJ improperly weighed the evidence at step three in determining that Plaintiff did not meet the "paragraph B" criteria of Listing 12.03. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03 (West 2016).[3] Plaintiff argues it was improper to give substantial weight to Dr. Schulman's November 2014 opinion because it did not consider subsequent statements (in 2016) from Plaintiff's treatment providers at Bert Nash. (Doc. 17 at 12.) Plaintiff makes a similar argument with respect to Dr. Duclos's opinion of March 2015. Plaintiff further contends the ALJ erred by finding that Dr. Duclos's statement that Plaintiff had "marked" limitations in two paragraph B categories was a typographical error. (*Id.* at 13.)

An ALJ is required to consider every medical opinion in the administrative record. Unless a treating source opinion is given controlling weight, medical opinions are to be evaluated by the ALJ under the factors contained in the regulations. *See Alston v. Berryhill*, No. 17-1253-JWL, 2018 WL 4509578, at *2 (D. Kan. Sept. 20, 2018) (citing 20 C.F.R. § 404.1527(d) and SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 13-24 (Supp. 2018)). "Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in

---

with Plaintiff's RFC could perform. (R. at 71.) Plaintiff has not specifically challenged this aspect of the ruling. At any rate, the apparent error appears harmless in light of findings and evidence that a person with Plaintiff's RFC could perform the laundry worker II and laundry sorter positions, and that those positions exist in substantial numbers in the national economy. *See Smith v. Berryhill*, 2018 WL 2227225, *6 (N.D. Fla. Apr. 12, 2018) (any ALJ error concerning one position was harmless where ALJ properly found plaintiff could perform other work consistent with his RFC.)

[3] The criteria for mental disorders have recently been amended. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 F.R. 66138-01. The version of the regulation in effect at the time of Plaintiff's application is used in this opinion.

the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* (citations omitted.) *See also* 20 C.F.R. § 404.1527(c).

The ALJ's opinion shows that he evaluated Dr. Schulman's and Dr. Duclos's opinions in accordance with the regulatory factors. The ALJ found these opinions were consistent with medical evidence in the record, that the findings were supported by narrative statements, and that both doctors cited medical records and non-medical evidence to support their opinions. (R. at 20.) The ALJ thus examined the degree to which the opinions were supported by relevant evidence and the consistency between those opinions and the record. Plaintiff contends the opinions should not have been credited because they did not take into account subsequent evidence of Plaintiff's condition and treatment, but that fact alone does not render the opinions invalid. The regulations require the ALJ to assess how consistent an opinion is with the entire record as well as how well the opinion is supported and explained. The ALJ properly considered those factors in giving substantial weight to the opinions. As the Commissioner points out, the subsequent treatment notes were very limited and are reasonably construed as bolstering the opinions of Schulman and Duclos that Plaintiff had only moderate limitations in social functioning and concentration. *See e.g.*, R. at 442 (medication has allowed Plaintiff to "keep organized"); R. at 444 (no problems with medications; Plaintiff driving a taxi; starting to play in a basketball league; thoughts organized; speech is clear, coherent, hesitant and then responsive); R. at 446 (Plaintiff feeling better and has improved cognition after changing medication; driving a taxi; speech clear and coherent; thoughts organized). The ALJ further observed that although Defendant had some difficultly responding to questions at the hearing and his mother reported he had problems communicating, there was evidence that Plaintiff had no trouble getting along with family, friends, or authority figures, and

that he was involved in organized activities. (R. at 20.) The ALJ also noted that Defendant's deficits in concentration had not prevented him from working at several jobs within the period of alleged disability. *Id.* In sum, the court concludes that the ALJ's weighing of the opinions of Schulman and Duclos was not contrary to the Act or the regulations.

Plaintiff contends the ALJ also erred by rejecting Dr. Duclos's statement that Plaintiff had "marked" limitations in social functioning and concentration on the basis that the statement was a typographical error. *See* Doc. 17 at 13-14 (arguing the ALJ was inconsistent by giving this portion of Dr. Duclos's opinion less weight.) As required by the regulations, the ALJ made clear how much weight he gave to Dr. Duclos's opinions and the reasons for doing so. (R. at 24.) *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) (ALJ must explain the weight given to opinion of non-treating physician.) Moreover, the report provided substantial support for the ALJ's conclusion that the reference to "marked" limitations in a narrative statement was indeed a typographical error, and that the doctor in fact rated Plaintiff as having "moderate" limitations in those two categories. In evaluating Plaintiff's mental impairment, Dr. Duclos addressed the "paragraph B" criteria individually, and specifically rated Plaintiff as having "moderate" limitations in both social functioning and concentration, persistence, and pace. (R. at 114.) The interactive form completed by Dr. Duclos noted that "You have indicated that … the requirements in paragraph 'B' of the appropriate Listing are not satisfied" - which would not have been true had she rated Plaintiff as "markedly" limited in two categories - such that she should also address the paragraph C criteria. (*Id.*) Dr. Duclos did so and concluded that the "[e]vidence does not establish the presence of the 'C' criteria." (*Id.*) Yet in a narrative portion explaining the limitations, Dr. Duclos wrote that Plaintiff "continues to have mild limitations in ADLs and *marked* limitations in social functioning and cpp. See MRFC." (*Id.*) (emphasis added.) The

10

"marked" comment was obviously contrary to the specific "moderate" ratings previously provided. It was also inconsistent with the comment that Plaintiff "continues to have" such limitations, given that Dr. Schulman previously indicated Plaintiff had only moderate limitations in the categories reviewed by Dr. Duclos. *See* R. at 81. If there were any doubt that the "marked" reference was a clerical error, it is removed by examination of the MRFC referred to, in which Dr. Duclos rated Plaintiff in a number of subcategories of concentration and persistence and social interaction. None of those ratings exceeded "moderately limited." For example, she found Plaintiff was only moderately limited in carrying out detailed instructions and maintaining concentration for extended periods, and that he had no significant limitations in carrying out simple instructions, maintaining a schedule and attendance, sustaining an ordinary routine, making simple work-related decisions, and completing a normal workweek without interruption from psychological symptoms. (R. at 116.) In fact, Dr, Duclos found Plaintiff was "not significantly limited" in most of the subcategories. (R. at 116-17.) Finally, in a narrative explanation of the MRFC, Dr. Duclos stated that Plaintiff "can attend, concentrate, and maintain pace and persistence for simple instruction [without the] need for special supervision." With respect to social interaction, Dr. Duclos commented only that "[d]ue to paranoia, [Plaintiff] is able to work in jobs requiring only infrequent social interactions [with the] general public and co-workers." (*Id.* at 117.) All of the foregoing supports the ALJ's conclusion that the sole narrative reference to "marked" limitations was a clerical error and that the doctor in fact rated Plaintiff's limitations in social interaction and concentration as moderate. The court thus finds the ALJ's weighing of the opinions of Drs. Schulman and Duclos was consistent with the legal standards of the Act.

2. <u>ALJ's explanation of the weight given to opinions</u>. Plaintiff next contends the ALJ failed to cite specific evidence or provide a link to the evidence to support his reasons for

discounting the opinions of Plaintiff's treatment providers or for giving great weight to the opinions of the state agency psychologists. (Doc. 17 at 1, 15-16.)

An ALJ must give good reasons for the weight assigned to a medical opinion, with the reasons being sufficiently specific to make clear to any subsequent reviewers the weight given to the opinion and the reasons for that weight. *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004). The ALJ is also charged with carefully considering all the relevant evidence and linking his or her findings to specific evidence. *Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000.) The ALJ's explanation in this case satisfies these standards. The ALJ made abundantly clear why he discounted the opinions of Nurse Practitioner Franklin, Dr. Yoshida, and counselor Gudenkauf. With respect to Franklin and Gudenkauf, the ALJ correctly noted that their opinions that Plaintiff could not perform substantial gainful work were not medical opinions at all but went to matters reserved for the Commissioner. (R. at 24-25.) *See Borgsmiller v. Astrue,* 499 F. App'x 812, 816 (10th Cir. 2012) ("Dr. Sanford's opinion that Ms. Borgsmiller is unable to work during her flares of severe pain is not a medical opinion, 20 C.F.R. § 404.1527(e), but an opinion on the ultimate issue of disability, which is a matter reserved to the Commissioner.") The ALJ also concluded their opinions were inconsistent with the contemporaneous treatment notes and with other evidence in the record. (R. at 24-25.) That evidence was specifically discussed elsewhere in the ALJ's opinion. It included a thorough review of Plaintiff's treatment records, wherein the ALJ pointed out that although Plaintiff at times showed anxiety, no diagnostic or mental status changes were documented in his treatment notes. On June 25, 2015, the ALJ noted, Plaintiff reported that he felt better, he was doing okay, he was working as a taxi driver, his speech was clear and coherent, his thoughts were organized, and he denied any hallucinations. A similar treatment note was entered on September 25, 2015, reflecting that Plaintiff was doing better, he was pleasant,

responsive, and motivated for treatment, he was working five days a week, and his mental status was unchanged, with no reports of hallucinations. (R. at 23-24.) The ALJ also discussed the evidence showing Plaintiff's mild limitations in ADLs (e.g., Plaintiff lived alone, was able to cook, shop, clean, and take care of his personal tasks without assistance, prepared meals, did dishes and laundry, and drove a car), and evidence that he was able to continue working at least part-time during the relevant period. (R. at 19.) This evidence discussed by the ALJ thus showed the basis for discounting the opinions of Franklin and Gudenkauf, and it provided substantial support for the ALJ's findings.

The same is true with respect to the ALJ's assessment of Dr. Yoshida's opinion. As the ALJ noted, the record showed that Dr. Yoshida had never seen Plaintiff. The forms he filled out were completed "on behalf of Cora Franklin." (R. at 468.) The ALJ found that Dr. Yoshida's opinion was not supported by the treatment notes. As indicated, the ALJ elsewhere thoroughly reviewed Franklin's treatment notes, pointing out they showed no mental status changes except for anxiety about injections; treatment notes in January and September of 2015 showed Plaintiff was working, his speech was clear and coherent, his thoughts were organized, and he denied hallucinations. His symptoms were controlled by medication to a degree that he was able to work during the period of alleged disability. Despite the treatment notes, Dr. Yoshida not only opined that Plaintiff had "marked" limitations in all three "paragraph B" categories of ADLs, social interaction, and concentration, but also had repeated episodes of decompensation of extended duration. (R. at 467.) As the ALJ pointed out, there is no evidence in the record that Plaintiff had repeated episodes of decompensation of extended duration, which the regulations defined as three episodes within one year (or an average of once every four months), each lasting for at least two weeks. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00(C)(4) (2016). Likewise, the ALJ had a

13

substantial basis for concluding that Dr. Yoshida's opinion that Plaintiff had "marked" limitations in ADLs was inconsistent with the treatment notes and the record evidence, which showed that Plaintiff lived alone and was able to routinely perform the activities of daily living without supervision, including maintaining hygiene, driving, shopping, cleaning, paying bills, and preparing meals. Dr. Yoshida's opinion of marked limitations in social interaction and concentration was likewise inconsistent with extensive portions of the treatment notes reviewed and discussed by the ALJ.

Plaintiff accurately points out that the ALJ's opinion, although extensive, did not discuss some aspects of the evidence. But where the court can follow the ALJ's reasoning and can determine that correct legal standards were applied – as it can here - merely technical omissions by the ALJ do not dictate reversal. *See Paulsen v. Colvin,* 665 F. App'x 660, 663 (10th Cir. 2016) (citation omitted.) The ALJ applied correct legal standards and his findings were supported by substantial evidence.

3. <u>Whether the ALJ's appointment violated the Appointments Clause</u>. Plaintiff argues the ALJ was an inferior officer who was not properly appointed under the Appointments Clause of the United States Constitution, and that this failure requires a new hearing. (Doc. 17 at 21.) *See* U.S. Const., Art. II, cl. 2 (Congress may vest appointment power of "inferior Officers … in the President alone, in the Courts of Law, or in the Heads of Departments.") ; *Lucia v. SEC*, 138 S. Ct. 2044 (2018) (ALJs with the SEC qualify as "Officers" who must be appointed in accordance with the Appointments Clause; remanding for new hearing before different ALJ where timely challenge was made). The Commissioner argues this claim is barred by Plaintiff's failure to raise it during the administrative process. (Doc. 24 at 27.)

Plaintiff concedes he did not raise this issue in the administrative proceedings, but points out that *Lucia* did not say a challenge must be made at the administrative level to be timely. (Doc. 28 at 9.) The weight of authority, however, including decisions from this district, holds that a failure to raise such a challenge at the administrative level operates as a waiver. *See Pearson v. Berryhill*, No. 17-4031-SAC, 2018 WL 6436092, *4 (D. Kan. Dec. 7, 2018) ("As of this date, courts that have considered this issue have unanimously rejected attacks on the validity of the ALJ's appointment under *Lucia* if claimant failed to make a constitutional challenge at the administrative level before the ALJ or the Appeals Council.") (citing cases). The court agrees. As Judge Crow pointed out, not only is the general rule that a party may not challenge an agency decision on a basis not presented to the agency, but the Social Security Act specifically requires presentation of claims to the Commissioner before they may be reviewed in the district court. *Id.* (citing *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 15 (2000)). And although the Tenth Circuit has not directly ruled on the issue, it recently held in an unpublished decision that an Appointments Clause challenge to a Department of Labor ALJ was waived by the claimant's failure to raise the issue at the administrative level. *Turner Bros., Inc. v. Conley*, ___F. App'x ___, 2018 WL 6523096, *1 (10th Cir. Dec. 11, 2018). For the reasons stated in *Pearson* and *Conley*, the court concludes that Plaintiff waived any Appointments Clause challenge with respect to the ALJ who denied his claim.

**IV. Conclusion**

The Commissioner's decision is AFFIRMED. IT IS SO ORDERED this 14th day of January, 2019.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE